# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 4:18-CR-00219 |
| v. | (Judge Brann) |
| RODREQUIS COUNCIL, | |
| Defendant. | |

## MEMORANDUM OPINION

**APRIL 3, 2019**

On March 29, 2019, Rodrequis Council, was sentenced by this Court to a term of 108 months incarceration. In fashioning this sentence, I both departed upward and varied upward from the advisory guideline range. The instant memorandum opinion serves to memorialize the in-court explanation I provided to Mr. Council at sentencing.[1]

## I. BACKGROUND

Mr. Council and his accomplice became acquainted with one another while they were both incarcerated at a federal facility in Florida. Together, they concocted

---

[1] *See* 18 U.S.C. § 3553(c)(2) (requiring district courts to "state in open court the reasons for imposing a particular sentence" and, the specific reason for imposing a sentence outside of the guideline range); *United States v. Merced,* 603 F.3d 203, 215–16 (3d Cir. 2010) (explaining that the sentencing court must adequately explain its chosen sentence to ensure meaningful appellate review).

an elaborate scheme to rob the SPE Federal Credit Union in State College, Pennsylvania.

Prior to the robbery, Mr. Council and his accomplice drove to a local Walmart to purchase a phone card. They planned to use the phone card to call in fake bomb threats to distract local authorities from responding to the actual robbery of the credit union. Additionally, Mr. Council and his accomplice purchased a variety of household materials and, together, they used those materials to manufacture two objects designed to look like explosive devices. Mr. Council placed one of two fake explosive objects on the campus of The Pennsylvania State University (Penn State), and he was aware that his accomplice placed a second fake explosive object on the roof of the Walmart from which the phone card was purchased.

On August 22, 2017 around 2:17 p.m., Penn State University Police responded to a bomb threat. The caller said the bomb was on the roof and would detonate in 90 minutes. Police evacuated the building and located a device on the roof. The Federal Bureau of Investigation's (FBI) bomb squad was called in and the squad determined that the object was not an explosive device.

On August 22, 2017 around 2:18 p.m., police in Patton Township, Centre County, Pennsylvania, responded to a bomb threat at Walmart. The caller reported that a bomb on the roof would detonate in 90 minutes. A search of the roof revealed

2

a device, and the store was evacuated. The FBI bomb squad determined that the object was not an explosive device.

While police were responding to the two bomb threats, Mr. Council's accomplice drove to the credit union using Mr. Council's truck. The accomplice entered the credit union and approached the counter. He handed the teller a bag and a note which read, in part, "If a dye pack goes off, the bomb will. If anyone walks out behind. Then I will detonate the bomb." The accomplice placed what appeared to be a bomb on the counter. The teller put $7,177.65 in the bag. The accomplice left the "bomb" on the counter and exited the building. Police responded to the bank. The FBI bomb squad was called in, and a robot was used to pick apart the fake explosive device.

Mr. Council told his accomplice to drive to Altoona, Pennsylvania after the robbery was complete. Mr. Council met his accomplice in Altoona and paid for him to stay at a motel until his accomplice left Pennsylvania. The accomplice gave Mr. Council about fifty percent of the proceeds—approximately $3,000 to $4,000.

On July 5, 2018, a one-count information was filed against Mr. Council, charging him with Armed Bank Robbery, a violation of 18 U.S.C. §§ 2113(a) and (d).[2] Mr. Council plead guilty to the information on July 17, 2018.[3]

---

[2] ECF No. 1.
[3] ECF No. 13.

## II. DISCUSSION

When imposing sentence, district courts follow a three-step process. First, the Court calculates the advisory sentencing guideline range.[4] Second, the Court rules on departure motions, if any, and states how the ruling affects the guideline calculation.[5] Third, the Court exercises discretion by considering the factors set forth in 18 U.S.C. § 3553(a) to determine whether a variance is appropriate.[6]

### A. Calculating the Advisory Sentencing Guideline Range

To calculate the appropriate guideline range, I began by considering unresolved objections to the presentence report to determine whether the guideline range should be altered. Mr. Council had objected to paragraph 17 of the presentence report, arguing that he should have received only a three-level increase under United States Sentencing Guideline (USSG) § 2B3.1(b)(2)(E) because the fake explosive device used in the credit union robbery was merely brandished rather than "otherwise used" by Mr. Council's accomplice. At sentencing, however, Mr. Council withdrew that objection.

Additionally, Mr. Council argued in his sentencing memorandum that he should only be considered a minor participant in the robbery under USSG § 3B1.2,

---

[4] *U.S. v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

[5] *Id.* (*citing U.S. v. Booker*, 543 U.S. 220 (2005)).

[6] *Id.*

4

and accordingly merited a two-level decrease.[7]  A minor participant is someone "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal."[8]  Construing this argument as seeking an adjustment to the advisory guidelines range, I concluded that Mr. Council was not a minor participant in the robbery.  Among the actions taken by Mr. Council specifically include the following: Mr. Council planned the robbery together with his accomplice; Mr. Council drove his accomplice to a Walmart to purchase a phone card for the purpose of calling in a bomb threat; Mr. Council personally placed a fake explosive object on the campus of Penn State University; and Mr. Council lent his accomplice his truck for use during the robbery.  Accordingly, I could not conclude that Mr. Council was less culpable than his accomplice, and his role could not be described as minor.

After resolving objections to the presentence report, I adopted both the factual findings and the Guideline calculation of the presentence report in their entirety.  Mr. Council's criminal history category was III, the offense level was 23, and the guideline range of imprisonment was 57 to 71 months.

---

[7] USSG § 3B1.2

[8] Commentary to USSG § 3B1.2.

## B. Ruling on Departure Motions

I next considered *sua sponte* whether an upward departure was warranted under USSG § 5K2.0(a)(2)(B) and USSG § 5K2.21. Notice of both grounds for departure was presented to the parties in paragraphs 76-79 of the presentence report.

USSG § 5K2.0(a)(2)(B) states that "A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence."[9]

This case presented extraordinary circumstances not present in typical armed bank robbery cases. Mr. Council and his accomplice did not just singularly rob a credit union using a fake bomb. They created a diversion by placing fake bombs in two locations—a Walmart, and on Penn State's campus—to distract police from responding to the credit union robbery. The fake bombs and accompanying bomb threats effectuated by Mr. Council and his accomplice caused Walmart and Penn State to be evacuated. In addition to inflicting fear and panic, those evacuations caused commerce to shut down. Even a dysfunctional bomb engenders the fear of bodily injury. Law enforcement authorities must respond to the perceived threat of explosion. And even though a fake bomb is incapable of inflicting the injuries it

---

[9] USSG § 5K2.0(a)(2)(B).

threatens, it creates a danger that a violent response will ensue. Ordinarily, this danger will arise because those threatened, their rescuers, or the police, can be expected to respond with force and possibly deadly force, and thereby endanger the safety of victims, bystanders, and even the perpetrator. Placing fake bombs in public areas causing Hitchcockian suspense appears to be as serious as the robbery itself, and this conduct is not captured in the guidelines calculation.

USSG § 5K2.21 states that "[t]he court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range."[10]

Offenses that could have been considered are: Brandishing a Firearm During and In Relation to a Crime of Violence (18 U.S.C. § 924(c)(1)(A)(ii)), Use of a Telephone to Make a False Bomb Threat Affecting Interstate Commerce (18 U.S.C. § 844(e)), Use or Carrying of An Explosive to Commit or During the Commission of Any Felony (18 U.S.C. § 844(h)), and Threatened Use of Weapon of Mass Destruction (18 U.S.C. § 2332a(a)(2)(B)).

---

[10] USSG § 5K2.21.

Accordingly, after considering arguments made by the parties, I found that an upward departure was warranted in this case, consistent with both USSG § 5K2.0(a)(2)(B) and 5K2.21, because Mr. Council's conduct was outside the heartland of the guidelines.

**C.     Section 3553(a) Factors**

Pursuant to *United States v. Booker*,[11] the guideline range is advisory only, and the district court may tailor the sentence in light of other statutory concerns as outlined in 18 U.S.C. § 3553(a). Congress has determined that the factors to be considered when imposing sentence are as follows:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider–
>
>> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>> (2) the need for the sentence imposed--
>>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>> (B) to afford adequate deterrence to criminal conduct;
>>> (C) to protect the public from further crimes of the defendant; and
>>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>>
>> (3) the kinds of sentences available;

---

[11] 543 U.S. 220 (2005).

(4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–
>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--
> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
> (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.[12]

---

[12] 18 U.S.C. § 3553(a).

Notice of my consideration of an upward variance was presented to the parties in paragraph 80 of the presentence report. Upon consideration of the Section 3553(a) factors, I found that varying upward from the top of the advisory guideline range to a term of imprisonment of 108 months was sufficient, and not greater than necessary, for the following reasons.

Regarding the nature and circumstances of the offense, the serious nature and circumstances of Mr. Council's offense required a correspondingly serious sentence. Mr. Council and his accomplice together created an elaborate scheme to rob SPE Federal Credit Union—a scheme that not only involved robbing the credit union itself to steal money, but also involved creating fake explosive devices, calling in bomb threats, and placing fake explosive devices in two locations to delay police responsiveness. The diversionary tactics Mr. Council and his accomplice used caused Walmart and Penn State to be evacuated. In addition to inflicting fear and panic, those evacuations caused commerce to shut down. Victims had no idea if or when those devices would explode.

Concerning the actual robbery of the credit union, Mr. Council's accomplice entered the credit union and threatened the teller with a note, which stated in part, "If a dye pack goes off, the bomb will. If anyone walks out behind. Then I will detonate the bomb." Mr. Council's accomplice fled the credit union with $7,177.65 in hand, but left the bomb behind. Victims in the credit union had no idea whether

the bomb would go off. An FBI bomb squad had to respond to the credit union and used a robot to pick apart the device. This conduct amounts to a serious offense, and the sentence I imposed reflects that seriousness.

Regarding the history and characteristics of the defendant, Mr. Council has an extensive criminal history involving bank robbery, multiple thefts, driving while impaired, public urination, and multiple trespassing violations. He committed the instant offense while on supervised release for a prior bank robbery. His repeated encounters with law enforcement and extensive criminal history suggests a high likelihood of recidivism and that he has not, at least at this stage of the game, acquired respect for the law. Accordingly, the sentence I imposed will promote respect for the law, both to Mr. Council and more broadly to others who may believe that they can commit such crimes with impunity. And given Mr. Council's background, there is a need to impose a sentence here to protect the public from further crimes of Mr. Council. As a result, the sentence imposed should achieve both specific and general deterrence.

Mr. Council's personal history does not appear far outside the norm. He states that he was raised by his maternal grandmother, has had regular contact with is mother, and he has extensive family support. I considered two letters sent to the Court on Mr. Council's behalf, and his fiancé appeared at sentencing. Mr. Council has one child, and he states that he had lost a child shortly after birth in 2017—a

11

terrible situation under any circumstances. Although he states that he has a history of depression and mental illness, and has used alcohol, and occasionally marijuana and Ecstasy, it does not appear that his depression, mental illness, or his drug use have impaired his judgment or otherwise help to explain his continued deviations from acceptable standards of behavior.

In fact, Mr. Council's education and accomplishments suggest that he should have known better—that is, that Mr. Council was in fact acquainted with what acceptable standards of behavior are. He graduated from high school, from college (University of Louisville), and more recently enrolled in the Pennsylvania College of Technology in Williamsport, Pennsylvania. He is intelligent and was previously a star athlete while in high school and college. In sum, his personal history—in particular his extensive familial support and his educational experience—rendered his repeated criminal violations more inexplicable.

The sentence imposed also reflected just punishment for the offense. Importantly, the 108-month sentence accounted for all of the circumstances surrounding Mr. Council's crime, but was not greater than necessary to achieve sentencing objectives. The sentence was well below the statutory maximum term of imprisonment of 25 years.

Regarding the advisory sentence prescribed by the United States Sentencing Commission's Guidelines Manual, I noted that Mr. Council's criminal history

category is III, the offense level is 23, and the guideline range of imprisonment is 57 – 71 months.

Regarding the need to provide restitution, Mr. Council and his accomplice stole funds from the SPE Federal Credit Union, and both will be required to repay those funds to the credit union.

Finally, I considered the need to avoid unwarranted sentencing discrepancies. In his sentencing memorandum to the Court, Mr. Council states that his accomplice was sentenced to 49 months imprisonment for this crime. In essence, Mr. Council argues that to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, this Court should be guided by the term of imprisonment that Mr. Council's accomplice received. The United States Court of Appeals for the Third Circuit in *United States v. Parker* stated that "a defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences."[13] The Third Circuit has also stated that "a criminal defendant has no constitutional right to be given a sentence equal in duration to that of his or her co-defendants," and a district court does not abuse its discretion merely by approving of a sentence that contains disparity between co-defendants.[14]

---

[13] *United States v. Parker*, 462 F.3d 273 (3d Cir. 2006).

[14] *United States v. Hart*, 273 F.3d 363, 379 (3d Cir. 2001).

But in considering the need to avoid unwarranted sentencing disparities in balancing the § 3553 factors, I note that Mr. Council is not less culpable here than his accomplice merely because it was his accomplice who entered the credit union. Again, among the actions taken by Mr. Council specifically include planning the robbery together with his accomplice; driving his accomplice to a Walmart to purchase a phone card for the purpose of calling in a bomb threat; personally placing a fake explosive object on the campus of Penn State; and lending his accomplice his truck for use during the robbery. Additionally, I note that both Mr. Council and his accomplice faced a statutory maximum term of imprisonment of 25 years. Balancing all of the 3553(a) factors, including Mr. Council's history and characteristics, the statutory maximum term he faces, and his participation in the present offense, to the extent that the sentencing discrepancy is at issue, it is not unwarranted, and comports with the Supreme Court's pronouncement in *United States v. Booker* that district courts are afforded "broad discretion in imposing a sentence within a statutory range."[15]

In sum, after balancing the factors in § 3553(a) and giving those factors the Court's full consideration, I fashioned a sentence that was reasonable, appropriate, and not greater than necessary to meet sentencing objectives.

---

[15] *United States v. Booker,* 543 U.S. 220, 223 (2005).

I acknowledge that our Court of Appeals has stated that "the farther a sentence varies from the advisory guidelines range, the more compelling the judge's reasons must be."[16] For the reasons I have explained, the sentence that I imposed—one that is above the guideline range but well below the statutory maximum term of imprisonment—is compelled by the facts of this case. An upward departure consistent with USSG §§ 5K2.0(a)(2)(B) and 5K2.21 is warranted here because this case lies outside the heartland to which the guidelines ordinarily apply. Additionally, an upward variance is also warranted after balancing the factors in § 3553(a). In summation, Mr. Council and this case present extraordinary circumstances not present in the typical armed bank robbery situations.

## III. CONCLUSION

For the foregoing reasons, the Court found that a term of imprisonment for 108 months was reasonable, appropriate, sufficient—but not greater than necessary—to meet sentencing objectives; I sentenced Mr. Council accordingly.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[16] *United States v. King,* 454 F.3d 187, 195 (3d Cir. 2006).